IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-310

 No. COA20-9

 Filed 6 July 2021

 Brunswick County, Nos. 18CRS2453, 18CRS51073-75

 STATE OF NORTH CAROLINA

 v.

 CHERELLE RENEE HILLS, Defendant.

 Appeal by Defendant from judgments entered 19 February 2019 by Judge

 Ronald L. Stephens in Superior Court, Brunswick County. Heard in the Court of

 Appeals 25 August 2020.

 Attorney General Joshua H. Stein, by Assistant Attorney General Barry H.
 Bloch, for the State.

 W. Michael Spivey, for Defendant-Appellant.

 STROUD, Chief Judge.

¶1 Cherelle Renee Hills (“Defendant”) appeals from a judgment entered upon jury

 verdicts finding her guilty of possession with intent to manufacture, sell, and deliver

 a Schedule I controlled substance, synthetic cannabinoid; possession with intent to

 sell and deliver a Schedule III controlled substance, Buprenorphine; possession with

 intent to sell and deliver heroin; three counts of trafficking heroin of 14 grams or more

 but less than 28 grams (by possession, by transportation, and by manufacturing); and
 STATE V. HILLS

 2021-NCCOA-310

 Opinion of the Court

 possession with intent to manufacture, sell, and deliver cocaine. Defendant argues

 that the trial court expressed an impermissible opinion; the indictment in 18 CRS

 2453 was facially invalid; and the trial court erred by denying her motion to dismiss.

 We hold that the trial court did not express an impermissible opinion that would

 warrant a new trial. However, because the indictment 18 CRS 2453 did not set forth

 the essential elements of the crime charged, we vacate Defendant’s conviction for

 possession with intent to manufacture, sell, and deliver a Schedule I controlled

 substance, synthetic cannabinoid.

 I. Background

¶2 The State’s evidence tended to show that in February of 2018, after being

 arrested and charged with numerous drug offenses, Desaraa Giano (“Ms. Giano”)

 agreed to work as an informant for narcotics agents within the Brunswick County

 Sheriff’s Office. Ms. Giano informed officers that Defendant, from whom she had

 purchased heroin in New Jersey three times, planned to bring forty “clips”1 of heroin

 to North Carolina to sell. Ms. Giano testified that she had worked with Defendant in

 a group home in New Jersey, and Defendant was listed in her phone as “Relly Hills.”

¶3 On 8 March 2018, Ms. Giano was instructed to call the number listed in her

 phone for “Relly;” however, due to “technical difficulties” from Ms. Giano’s handling

 1 In her testimony, Ms. Giano explained that a “brick” or a “clip” is made up of 50 “bindles”

 or “bags” of heroin. Each “bindle” or “bag” usually consists of one dose of heroin.
 STATE V. HILLS

 2021-NCCOA-310

 Opinion of the Court

 of the recording device, the recording of the person Ms. Giano spoke to was not clear.

 Agent Samuel Britt of the Brunswick County Sheriff’s Department, who was present

 when Ms. Giano made the call, testified that he could hear a woman’s voice on the

 other end of the line, that Ms. Giano referred to that person as “Cherelle,” Cherelle

 “stated that she was bringing her bros and the kids with her on the trip to North

 Carolina[,]” and Cherelle planned to bring 40 “bricks” of heroin to North Carolina.

 After the FBI confirmed that the phone number Ms. Giano used belonged to Cherrelle

 Hills, Agent Britt received a “tracking order” for Defendant’s phone.

¶4 On 9 March 2018, officers tracked the location of Defendant’s phone as it moved

 from New Jersey to North Carolina. Throughout 9 March into the early hours of 10

 March, Ms. Giano communicated with Defendant via text message about the

 transportation of the drugs, and Ms. Giano forwarded the text messages to Agent

 Britt. Officers ultimately tracked the location of the phone to a burgundy Dodge van

 in the parking lot of a store in Wayne County and then followed the van.

¶5 At approximately 2:00 A.M. on 10 March 2018, officers initiated a traffic stop

 and pulled the van over for speeding. The van had three rows of seats: Defendant

 was in the driver’s seat; Jerry Colvin was in the passenger’s seat; Kenneth Norman

 was in the second row behind Defendant; and two children were in the third row.

 After K-9 officers alerted to the presence of narcotics, a search of a compartment

 under the floor board of the second row of seats revealed Tasty Cake boxes, Swiss
 STATE V. HILLS

 2021-NCCOA-310

 Opinion of the Court

 Cake Rolls boxes, and a cell phone box—all containing controlled substances. The

 three adults were arrested, and the children were placed in the custody of the

 Department of Social Services. Chemical analysis identified the controlled

 substances found in the van as 24.3 grams of heroin, less than .1 gram of cocaine,

 fourteen strips of Buprenorphine, and .33 grams of synthetic cannabinoid.2 The

 State’s expert witness, a forensic scientist in the Drug Chemistry Section at the North

 Carolina State Crime Lab, testified that the green leafy material discovered in the

 van was “a synthetic cannabinoid called 540 ADD.”

¶6 Defendant testified that her nickname was Relly and that she rented the van

 to drive to “South of the Border” in South Carolina to purchase cigarettes and

 fireworks to resell in New Jersey. Defendant denied texting with Ms. Giano during

 the drive; she testified that Jerry Colvin was sending text messages from her phone.

 Defendant denied making any arrangements with Ms. Giano to sell her drugs.

¶7 The case came on for trial on 21 January 2019 and 19 February 2019 in

 Superior Court, Brunswick County. The jury returned verdicts finding Defendant

 guilty of possession with intent to manufacture, sell, and deliver a Schedule I

 controlled substance synthetic cannabinoid; possession with intent to sell and deliver

 2 The State’s expert witness explained that a cannabinoid “is what gives the plant material

 its – the effect of being high,” so a synthetic cannabinoid “is one that is man-made, not
 natural, and it’s usually sprayed on non-controlled plant material.”
 STATE V. HILLS

 2021-NCCOA-310

 Opinion of the Court

 a Schedule III controlled substance, Buprenorphine; possession with intent to sell

 and deliver heroin; 3 counts of trafficking heroin of 14 grams or more but less than

 28 grams (by possession, by transportation, and by manufacturing); and possession

 with intent to manufacture, sell, and deliver cocaine. The trial court consolidated the

 convictions for judgment into Counts II and III of 18 CRS 51074 and imposed fines of

 $100,000 in each case. The trial court also imposed consecutive sentences of

 imprisonment for a minimum of 90 months and a maximum of 117 months.3

 II. Petition for Writ of Certiorari

¶8 Defendant filed a petition for writ of certiorari on 3 February 2020

 acknowledging that “[t]he record is clear that [Defendant] wanted to give notice of

 appeal but her trial counsel failed to do so.” Under Rule 21, a “writ of certiorari may

 be issued in appropriate circumstances by either appellate court to permit review of

 the judgments and orders of trial tribunals when the right to prosecute an appeal has

 been lost by failure to take timely action . . . .” N.C. R. App. P. 21(a)(1). In our

 discretion, we allow Defendant’s petition.

 III. Impermissible Opinion

¶9 Defendant argues that “the trial court expressed an impermissible opinion

 when it instructed the jury to disregard evidence related to involvement of others in

 3 The trial court subsequently entered amended judgments to correct a clerical error;
 however, the minimum and maximum terms of confinement remained the same.
 STATE V. HILLS

 2021-NCCOA-310

 Opinion of the Court

 the offenses with which [Defendant] was charged.” (Original in all caps.) The State

 contends that Defendant’s failure to object to the trial court’s statement limits this

 Court’s review to plain error. See N.C. R. App. P. 10(b)(2). However, it is well

 established that a “defendant’s failure to object to alleged expressions of opinion by

 the trial court in violation of [N.C. Gen. Stat. § 15A-1222 and N.C. Gen. Stat. § 15A-

 1232] does not preclude his raising the issue on appeal.” State v. Young, 324 N.C.

 489, 494, 380 S.E.2d 94, 97 (1989) (citations omitted); see also State v. Austin, ___

 N.C. App. ___, ___, 849 S.E.2d 307, 310 (2020). Therefore, Defendant’s argument is

 preserved as a matter of law.

¶ 10 The prohibition on a trial court’s expression of opinion is codified in North

 Carolina General Statutes § 15A-1222 and § 15A-1232. North Carolina General

 Statute § 15A-1222 provides that “[t]he judge may not express during any stage of

 the trial, any opinion in the presence of the jury on any question of fact to be decided

 by the jury.” N.C. Gen. Stat. § 15A-1222 (2019). Similarly, North Carolina General

 Statute § 15A-1232 states, “[i]n instructing the jury, the judge shall not express an

 opinion as to whether or not a fact has been proved[.]” N.C. Gen. Stat. § 15A-1232

 (2019). “Whether the judge’s language amounts to an expression of opinion is

 determined by its probable meaning to the jury, not by the judge’s motive.” State v.

 McEachern, 283 N.C. 57, 59–60, 194 S.E.2d 787, 789 (1973) (citations omitted). This

 Court has explained, “[t]he slightest intimation from the trial judge as to the weight
 STATE V. HILLS

 2021-NCCOA-310

 Opinion of the Court

 or credibility to be given evidentiary matters will always have great weight with the

 jury, and great care must be exercised to [e]nsure that neither party is unduly

 prejudiced by any expression from the bench which is likely to prevent a fair and

 impartial trial.” State v. Grogan, 40 N.C. App. 371, 374, 253 S.E.2d 20, 22 (1979)

 (citation omitted).

¶ 11 We review the totality of the circumstances “[i]n evaluating whether a judge’s

 comments cross into the realm of impermissible opinion,” State v. Larrimore, 340 N.C.

 119, 155, 456 S.E.2d 789, 808 (1995) (citation omitted), as “[t]here must be no

 indication of the judge’s opinion upon the facts, to the hurt of either party, either

 directly or indirectly, by words or conduct,” State v. Benton, 226 N.C. 745, 749, 40

 S.E.2d 617, 619 (1946) (citation and quotation marks omitted). “Additionally, the

 timing of the remarks must be considered.” State v. Foye, 220 N.C. App. 37, 47, 725

 S.E.2d 73, 81 (2012) (citation omitted). However, “[a] remark by the court is not

 grounds for a new trial if, when considered in the light of the circumstances under

 which it was made, it could not have prejudiced [the] defendant’s case. The burden

 rests on the defendant to show that the trial court’s remarks were prejudicial.” State

 v. Anderson, 350 N.C. 152, 179, 513 S.E.2d 296, 312 (1999) (citations and quotation

 marks omitted).

¶ 12 Here, after instructing the jury on each relevant charge, the trial court stated:

 Let me just mention also that the fact that other people
 STATE V. HILLS

 2021-NCCOA-310

 Opinion of the Court

 were charged during the course of this investigation.
 Anyone else charged with this or involved with this will
 have their day in court. Your focus today is on that
 evidence against this defendant, and the State has the
 burden of proof of guilt beyond a reasonable doubt based on
 the evidence that has been presented during the course of
 this trial as to her. You should not be distracted or
 influenced by the fact that someone else may be charged or
 what may or may not happen in their cases. Again that’s
 your focus and will not be a focus for you to – or it should
 not influence you in any way in your decision making
 progress.

 Defendant argues that the challenged instruction could be reasonably interpreted by

 the jury to convey three impermissible opinions: (1) “the instruction opines that ‘this,’

 meaning the crimes charged, occurred and that the others ‘charged’ or ‘involved’ in

 ‘this’ will have their day in court”; (2) “the instruction expresses the court’s opinion

 that all evidence related to anyone else being responsible for putting the drugs in the

 van is not credible and the jury should not let it influence its verdict ‘in any way”’;

 and (3) “the instruction characterizes [Defendant’s] defense as, in the court’s opinion,

 a distraction that should be ignored.” (Emphasis in original.)

¶ 13 First, the trial court did not express an opinion that the crimes for which

 Defendant was charged actually occurred. Defendant does not dispute that drugs

 were seized from a van she was driving on 10 March 2018. As stated in her brief,

 Defendant’s “sole defense was that she did not know that any drugs were in the van

 and had nothing to do with the sale of any drugs[,]” and “[t]hus, the men traveling
 STATE V. HILLS

 2021-NCCOA-310

 Opinion of the Court

 with her must have been transporting the drugs without her knowledge.” The

 disputed question of fact for the jury’s determination was whether Defendant was

 guilty of the crimes charged, not whether the crimes occurred.

¶ 14 Second, the trial court did not express an opinion that all evidence related to

 the defense’s theory that someone else was responsible for transporting the drugs was

 “not credible” and should be ignored. Read in context, the trial court’s statement did

 not touch on Defendant’s evidence; the instruction referred to the “evidence against

 this defendant,” and the State’s “burden of proof of guilt beyond a reasonable doubt

 based on the evidence that has been presented during the course of this trial as to

 her.” The trial court’s statement did not refer to the credibility of any evidence.

 Therefore, it is not probable that the jury inferred that the trial court’s instruction

 regarding the State’s evidence against Defendant expressed an opinion on the

 credibility of Defendant’s evidence.

¶ 15 Third, the trial court’s statement did not imply an opinion that Defendant’s

 defense was a distraction that should be ignored. Defendant argues that in State v.

 Springs, 200 N.C. App. 288, 683 S.E.2d 432 (2009), “this Court held a much less

 egregious expression of opinion that the jury should ignore the defense that another

 person committed the crime to be an impermissible expression of opinion requiring a

 new trial.” In Springs, after officers found marijuana and a digital scale at the

 defendant’s apartment, the defendant admitted “that the drugs and scale were
 STATE V. HILLS

 2021-NCCOA-310

 Opinion of the Court

hers[;]” however, at trial, the defendant testified that the drugs and scale actually

belonged to her boyfriend, Mr. Greer, and that she had only claimed ownership

“because she was afraid of Greer[.]” 200 N.C. App. at 290, 683 S.E.2d at 434. During

the defendant’s testimony, the following exchange occurred:

 Q: During that time, was [Greer] working?

 A: Yes.

 Q: And how often would you say that was?

 A: Not that often because he knew that he could not be
 there, so he didn’t stay there that much.

 THE STATE: Objection. Your Honor. Where he was or was
 not has nothing to do with this charge.

 THE COURT: Sustained. Let’s move on to something else.

 Q: Are you aware though of him staying . . .

 THE COURT: Let[’]s move on to another area. He has no
 involvement with these charges.

Id. at 291, 683 S.E.2d at 434 (alterations in original) (emphasis added). This Court

explained that “[a] reasonable interpretation of the statement is that Greer was not

involved in defendant’s purported possession of the drugs and scale” so the statement

could have discredited both the defendant and a corroborating witnesses’ testimony

that Greer “had easy access to the apartment and that he frequently sold marijuana .

. . , effectively rendering the defense’s theory invalid or unbelievable.” Id. at 293, 683
 STATE V. HILLS

 2021-NCCOA-310

 Opinion of the Court

 S.E.2d at 435–36. And because “the trial judge’s statement occurred near the

 beginning of defendant’s testimony[,]” it “may have discredited the remainder of

 defendant’s testimony in the eyes of the jury.” Id. at 293, 683 S.E.2d at 436. As a

 result, this Court held:

 [t]he statement rose to the level of an impermissible
 opinion that Greer was not involved with the possession of
 the drugs or scales. Whether Greer was involved with the
 drugs and scales, and to what degree, were factual
 questions for the jury to decide. Although surely
 unintentional, the trial judge’s statement suggested that
 he had already assessed the credibility of defendant’s
 evidence and found it lacking.

 Id.

¶ 16 Here, the trial court did not affirmatively state that a certain person crucial to

 the defense’s theory was not involved in the charges. To the contrary, the trial court

 instructed the jury that “[a]nyone else charged with this or involved with this will

 have their day in court.” The trial court’s instruction, therefore, did not reflect an

 opinion on the credibility of Defendant’s evidence but, instead, reminded the jury it

 must only consider the evidence presented during the course of the hearing. Viewed

 in context, the instruction to “not be distracted or influenced by the fact that someone

 else may be charged or what may or may not happen in their cases” refers to the

 State’s burden to prove beyond a reasonable doubt Defendant’s guilt. Indeed, in the

 sentence preceding the challenged instruction, the trial court stated to the jury,
 STATE V. HILLS

 2021-NCCOA-310

 Opinion of the Court

 “[y]our focus today is on that evidence against this defendant, and the State has the

 burden of proof of guilt beyond a reasonable doubt based on the evidence that has

 been presented during the course of this trial as to her.”

¶ 17 In contrast, in Springs, 200 N.C. App. 288, 683 S.E.2d 432, the trial court’s

 statement during the defendant’s testimony could be interpreted as the trial court’s

 opinion on a disputed fact, whereas the challenged statement here was in the form of

 an instruction made to the jury after the close of the evidence. The jury had heard

 all the evidence and had been instructed on all the charges. The trial court had also

 specifically instructed the jury as follows:

 The law, as indeed it should, requires the presiding judge
 to be impartial and fair. You’re not to draw any inference
 from any ruling that I may have made or any inflection in
 my voice or any expression on my face or any question that
 I may have asked a witness or anything else that I may
 have done by saying anything to the lawyers or anything
 else that I have an opinion or that I have intimated an
 opinion as to whether any part of the evidence should be
 believed or disbelieved or as to whether any fact has or has
 not been proven or as to what your findings should be.

 Thus, before making the statement in question, the trial court had specifically

 instructed the jury to not glean any indication of an opinion from the trial court’s

 statements or actions. Moreover, because the trial court’s instruction to the jury

 occurred at the very end of the trial after the close of evidence, it could not have

 discredited any subsequent testimony. Reviewing the totality of the circumstances,
 STATE V. HILLS

 2021-NCCOA-310

 Opinion of the Court

 we hold that the trial court did not express an impermissible opinion to the jury.

 IV. Indictment

¶ 18 Defendant contends that “the indictment in 18 CRS 2453 [(the “Indictment”)]

 is facially invalid because it did not identify a substance listed in the Controlled

 Substances Act.” (Original in all caps.) “The purpose of an indictment is to give a

 defendant notice of the crime for which he is being charged[.]” State v. Bowen, 139

 N.C. App. 18, 24, 533 S.E.2d 248, 252 (2000). “It is well settled that a felony

 conviction must be supported by a valid indictment which sets forth each essential

 element of the crime charged[,]” and this Court has held that “[i]dentity of a controlled

 substance allegedly possessed constitutes such an essential element.” State v.

 Sullivan, 242 N.C. App. 230, 232, 775 S.E.2d 23, 26 (2015) (citations omitted); see also

 State v. Stith, 246 N.C. App. 714, 717, 787 S.E.2d 40, 43 (2016) (“It is true that the

 identity of the controlled substance is an essential element of the crime of possession of

 a controlled substance with the intent to sell or deliver.” (emphasis in the original

 (citation omitted))). “An indictment is invalid where it fails to state some essential

 and necessary element of the offense of which the defendant is found guilty.” State

 v. Ledwell, 171 N.C. App. 328, 331, 614 S.E.2d 412, 414 (2005) (citations and

 quotations omitted).

¶ 19 Here, the Indictment alleged that Defendant “possess[ed] with the intent to

 manufacture, sell and deliver”
 STATE V. HILLS

 2021-NCCOA-310

 Opinion of the Court

 a controlled substance, namely Methyl(2S)-2-{{1-(5-
 fluoropentyl)-1H-indazol-3-yl]formamido}-3,3-
 dimethylbutanoate (5F-ADB), which is included in
 Schedule I of the North Carolina Controlled Substances
 Act.

¶ 20 The State’s evidence at trial revealed that it had intended the Indictment

 charge Defendant with possession with the intent to manufacture, sell and deliver a

 synthetic cannabinoid. Schedule I of the Controlled Substances Act is contained in

 North Carolina General Statute § 90-89 and enumerates seven categories of

 controlled substances: opiates, opium derivatives, hallucinogenic substances,

 systemic depressants, stimulants, NBOMe compounds, and synthetic cannabinoids.

 N.C. Gen. Stat. § 90-89 (2019). North Carolina General Statute § 90-89(7) identifies

 18 “examples of synthetic cannabinoids”; however, neither of the chemical names in

 the Indictment—“Methyl(2S)-2-{{1-(5-fluoropentyl)-1H-indazol-3-yl]formamido}-3,3-

 dimethylbutanoate” nor (5F-ADB)—is listed among them. N.C. Gen. Stat. § 90-

 89(7)(a)-(r). Although the Indictment alleged that the chemical formula charged was

 “included in Schedule I of the North Carolina Controlled Substances Act[,]” no such

 formula appears in any section of Schedule I of the North Carolina Controlled

 Substances Act. N.C. Gen. Stat. § 90-89. This Court has held when “the substance

 listed in [a] defendant’s indictment does not appear in Schedule I of our Controlled

 Substances Act, the indictment is fatally flawed[.]” State v. Turshizi, 175 N.C. App.

 783, 786, 625 S.E.2d 604, 606 (2006); see also Ledwell, 171 N.C. App. at 333, 614
 STATE V. HILLS

 2021-NCCOA-310

 Opinion of the Court

 S.E.2d at 415 (vacating the defendant’s conviction for possession of

 “methylenedioxyamphetamine (MDA)” when “the substance listed in [the

 d]efendant’s indictment d[id] not appear in Schedule I of the North Carolina

 Controlled Substances Act”).

¶ 21 The State asserts that “no advanced knowledge of chemistry is needed to

 further identify and place 5F-ADB within the Controlled Substance Act as a synthetic

 cannabinoid” because “[a] simple on-line search 5F-ADB as an indazole-based

 synthetic cannabinoid used as an active ingredient in synthetic cannabis products.”

 The State cites the website Wikipedia in support of this argument. North Carolina

 courts have never recognized Wikipedia as an authoritative source for any factual

 evidence or any legal argument, nor may this Court use Wikipedia to supplement the

 language of indictment. Wikipedia itself has a disclaimer which includes the

 following caveats regarding its reliability:

 Wikipedia is written collaboratively by largely anonymous
 volunteers who write without pay. Anyone with Internet
 access can write and make changes to Wikipedia articles,
 except in limited cases where editing is restricted to
 prevent further disruption or vandalism.

 ...

 Wikipedia is a live collaboration differing from paper-based
 reference sources in important ways. It is continually
 created and updated, with articles on new events
 appearing within minutes, rather than months or years.
 Because everybody can help improve it, Wikipedia has
 STATE V. HILLS

 2021-NCCOA-310

 Opinion of the Court

 become more comprehensive than any other encyclopedia.
 Besides quantity, its contributors work on improving
 quality, removing or repairing misinformation, and other
 errors. Over time, articles tend to become more
 comprehensive and balanced. However, because anyone
 can click “edit” at any time and add content, any article
 may contain undetected misinformation, errors, or
 vandalism. Readers who are aware of this can obtain valid
 information, avoid recently added misinformation [ ] and
 fix the article.

 https://en.wikipedia.org/wiki/Wikipedia:About

¶ 22 The facial validity of an indictment “should be judged based solely upon the

 language of the criminal pleading in question without giving any consideration to the

 evidence that is ultimately offered in support of the accusation contained in that

 pleading.” State v. White, 372 N.C. 248, 254, 827 S.E.2d 80, 84 (2019) (citation and

 quotation marks omitted). And “[a] court may not look to extrinsic evidence to

 supplement a missing or deficient allegation in an indictment.” Id. at 254, 827 S.E.2d

 at 84 (citation omitted). The State’s contention that “a simple on-line search” would

 have revealed what Defendant was being charged with appears to be a concession

 that the controlled substance was not identifiable within the four corners of the

 Indictment, i.e., the Indictment did not set forth an essential element of the crime

 charged. Accordingly, the Indictment is fatally flawed, and we vacate Defendant’s

 conviction in 18 CRS 2453. Because we vacate this conviction, we need not address

 Defendant’s final assertion that the trial court erred in denying her motion to dismiss
 STATE V. HILLS

 2021-NCCOA-310

 Opinion of the Court

 this charge.

 V. Conclusion

¶ 23 We hold that the trial court did not convey impermissible opinions on disputed

 facts to the jury. As a result, no new trial is warranted. However, because the

 Indictment did not set forth the essential elements of one of the crimes charged, we

 vacate Defendant’s conviction in 18 CRS 2453 for possession with intent to

 manufacture, sell, and deliver a Schedule I controlled substance synthetic

 cannabinoid.

 NO ERROR IN PART; VACATED IN PART.

 Judges DIETZ and ZACHARY concur.